UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| MINALEAH A. KOFFRON, | Civil Action No.  1:23-cv-00327 |
| Plaintiff, | Hon.  Robert J. Jonker |
| V | Circuit Court Case No:  23-0168-CD |
| PORTAGE PUBLIC SCHOOLS, MARK BIELANG, Superintendent and NATHAN A. LEDLOW, Interim Principal Of Portage Northern High School (in their individual and governmental capacities). | |
| Defendants. | |

_____

| | |
|---|---|
| Marla A. Linderman Richelew (P55759) | Mark T. Ostrowski  (P49761) |
| LINDERMAN LAW PLLC | Jessica M. Stark  (P80647) |
| Attorneys for Plaintiff | KLUCZYNSKI, GIRTZ & VOGELANG |
| 531 Woodgrove Drive | Attorneys for Defendants |
| Ann Arbor,  MI  48103 | 3033 Orchard Vista Dr. SE, Ste. 308 |
| (810) 220-0600 | Grand Rapids, MI  49546 |
| Email:  lindermanlaw@sbcglobal.net | (616) 559-8649 |
| | Email:  marko@kgvlaw.com |

_____

# DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION REGARDING PENDANT JURISDICTION

                                          KLUCZYNSKI, GIRTZ & VOGELZANG

                                  By:    Mark T. Ostrowski (P49761)
                                           Attorney for Defendant
                              BUSINESS ADDRESS:
                                    3033 Orchard Vista Dr SE, Suite 308
                                    Grand Rapids, MI 49546
                                    616/559-8649 (direct dial)

## TABLE OF CONTENTS

[TABLE OF CONTENTS](#) ...................................................................................................... ii

[INDEX OF AUTHORITIES](#) ............................................................................................. 3

[I.   INTRODUCTION](#) ...................................................................................................... 4

[II.  PURSUANT TO THE JUDICIAL IMPROVEMENTS ACT OF 1990, THE EXERCISE OF SUPPLEMENTAL JURISDICTION OVER PENDANT CLAIMS ARISING OUT OF THE SAME FACTS AND CIRCUMSTANCE IS MANDATORY UNLESS ONE OF FOUR EXCEPTIONS APPLY.](#) .............................................................................. 10

[III. NONE OF THE EXCEPTIONS SET FORTH IN SUBSECTION (C) APPLY.](#) ................. 12

[CONCLUSION](#) ................................................................................................................. 13

## INDEX OF AUTHORITIES

**Cases**

Ahearn v CharterTwp. Of Bloomfield,
  100 F.3d 451, 454-55 (6th Cir. 1996)……………………………………………………… 11
Barrett v Kirtland Community College,
  245 Mich App 306, 314, 628 NW2d 63 (2001)………………………………………………. 12
Braunfeld v Brown,
  366 U.S. 599, 606 (1961) Id. at 93-94…………………………………………………….. 5
Chambers v Trettco. Inc.
  463 Mich 297, 313; 614 NW2d 910 (2000)……………………………………………….. 12
Executive Software N. Am. v U.S. Dist. Ct. for the Cent. Dist. of Cal.
  24 F.3d 1545, 1555 (9th Cir. 1994)………………………………………………………… 11
Goss v Lopez,
  419 U.S. 565, 574 (1975)……………………………………………………………….. 6
Hall v Furest, unpublished decision of the United States District Court
  for the Eastern District, docket no. 02-70625, 2007 WL 2159373 (E.D. Mich. 2007)………. 11
Harper v Auto Alliance Int'l, Inc.,
  392 F.3d 195, 209 (6th Cir. 2004)……………………………………………………….. 11
Kahn v Fort Bend Independent School District,
  561 F. Supp. 2d 760 (S.D. Tex. 2008)…………………………………………………… 6
Lindsay v Government Employees Insurance Company,
  448 F.3d 416 421 (D.D. Cir. 2006)………………………………………………………. 10
McCoy v Webster,
  47 F.3d 404, 406n. 3 (11th Cir. 1995)…………………………………………………… 11
New Rock Asset Partners, L.P. v Preferred Entity Advancements, Inc.,
  101 F.3d 1492, 1509 (3d Cir. 1996)…………………………………………………….. 11
O'Leary v Charter Twp. of Flint,
  No. 295078, 2011 WL 1376306, at *2 (Mich. Ct. App. Apr. 12, 2011)……………………… 12
Smith v Board of Education, North Baylon Union Free School,
  844 F.2d 90, ,92-94 (2nd Cir. 1988)……………………………………………………. 5

**Statutes**

28 U.S.C. § 1367(a)…………………………………………………………………… 10, 11
28 USC § 1367………………………………………………………………………… 11, 13
28 USC § 1367(c)……………………………………………………………………… 10, 12

**Other Authorities**

16 JAMES WM. MOORE ET AL.,
  MOORE'S FEDERAL PRACTICE § 106.61 (3D ED. 1997)………………………………… 11

I.       **INTRODUCTION AND BRIEF STATEMENT OF FACTS.**

Defendants respectfully request that this Court exercise pendent or supplemental jurisdiction over the state law claims in this case. Plaintiff chose to include federal claims arising under the First Amendment to the United States Constitution in addition to her state law claims. The federal judiciary has greater expertise in addressing claims arising out of the First Amendment and the right to religious expression. All of the claims in this case arise out of the same set of facts. The principles are nearly identical under federal and state law requiring this court to determine whether Defendants intentionally violated Plaintiff's right to religious expression and/or improperly burdened same. Moreover, Defendants have reason to believe they will not receive a fair trial in Kalamazoo County Circuit Court.

Plaintiff filed her lawsuit on Monday, March 27, 2023. Defense counsel immediately contacted Plaintiff's counsel asking for a copy of her filings. Plaintiff responded by saying that she could not meet our request due to an inability to obtain copies of the documents which were filed with the Kalamazoo County Circuit Court. As a result, defense counsel's assistant contacted the clerk of the court and was informed that copies of the filings could only be obtained if a check was presented for the cost of copying the pages involved. The clerk stated that payment could not be made via credit card. Defense counsel arranged for a check to be sent via Federal Express to the court. Defense counsel was finally able to obtain copies of the pleadings filed with the State Court on Wednesday, March 29, 2023.

By the time defense counsel received copies of the filings, the Court had already ruled on Plaintiff's Ex Parte Motion for Temporary Restraining Order. The Order was prepared by plaintiff's counsel and rubber stamped by the Circuit Court. Plaintiff was well aware that school was not in session as spring break occurred during the week of March 27, 2023. Plaintiff's

counsel knew or should have known that defense counsel would be unable to effectively communicate with his clients during this time.

To make matters worse, despite the fact that the Order granting the TRO specified that a hearing would be held on May 12, 2023, to determine whether a preliminary injunction should enter, the Circuit Court sent notice via email on Thursday, March 30, 2023, that the **hearing would instead take place the following day on March 31, 2023**. Defense counsel was prejudiced by the sudden change in the date for the hearing and inability to effectively communicate with his clients.

Defense counsel is concerned that the Kalamazoo County Circuit Court is being influenced by the barrage of publicity generated by Plaintiff and her attorneys in contacting all local media in an effort to prosecute her claims in the court of public opinion. The fact the Circuit Court without explanation expedited the hearing to take place only one day after defense counsel was able to procure the pleadings creates an appearance that the Court was influenced by the publicity generated by Plaintiff and her attorneys.

Defense counsel submits that to date, his clients have been treated unfairly and suspect that this pattern will continue if the case is remanded to state court. In addition, Plaintiff will not be able to show a likelihood of prevailing on the merits in order to obtain a preliminary injunction in this matter. The Second Circuit for the United States Court of Appeals, rejected the same argument raised by plaintiff in *Smith v Board of Education, North Baylon Union Free School*, 844 F.2d 90, 92-94 (2nd Cir. 1988). In *Smith* an Orthodox Jewish student sued to enjoin the board of education from scheduling graduation for Saturday or during the Sabbath. The Court held there was no violation of the student's rights to free exercise of his religion where attendance was not required as part of the educational program or to receive a diploma.

The Court explained that mere attendance at a ceremony to celebrate graduation did not rise to the level of an important benefit or right. The protected right was to receive an education and a diploma. Both of which are independent of the ceremony.

There is no basis to distinguish the ruling in *Smith* from this case. In fact, in *Smith*, plaintiff's father, a Rabbi, began requesting that the ceremony be rescheduled from the beginning of the student's freshman year and continued to do so throughout all four years of high school. Plaintiff in *Smith* also filed his lawsuit 1.5 years prior to the date scheduled for the Saturday graduation ceremony. The school board's rationale, in *Smith*, for not moving the date to Sunday as requested was based on the fact that Saturday was more convenient for most other participants and the request would interfere with commencement of vacation plans for other families and employees. Unlike the present case the timing of the request to move the ceremony was made well before specific plans had been made.

The Second Circuit held that participation in a graduation ceremony did not implicate or impair one's freedom to exercise one's religious beliefs. As the Court stated:

> The School Board's scheduling of graduation on Saturday will deny David Smith the opportunity to attend the exercises but we do not believe this will deny him an important benefit – he will receive his diploma and therefore will be vested with the interests that it represents whether or not he attends the graduation exercises.
>
> In a pluralistic society such as ours it is impossible for government to accommodate every need of every religious group., *See Braunfeld v Brown*, 366 U.S. 599, 606 (1961). Id. at 93-94.
>
> With this in mind, we believe that the burden being placed on David Smith's free exercise of his religious beliefs simply makes practicing of his religion more difficult than the practice of other religions but that it does not rise to the level of a violation of the free exercise clause. Id.

The United States District Court in *Khan v Fort Bend Independent School District*, 561 F. Supp.2d 760 (S.D. Tex. 2008) likewise concluded that participation in a high school graduation

6

ceremony did involve a property or liberty interest which could support a due process claim.  The Court in *Khan* stated:

> A student has an undeniable property interest in a state-provided public education. *Goss v Lopez*, 419 U.S.565, 574 (1975).  Significantly, however, the United States Supreme Court, the United States Court of Appeals for the Fifth Circuit and the United States District Court for the Southern District of Texas have all recognized that the United States Constitution's due process guarantees do not protect a student's interest in participating in extracurricular activities, such as a graduation ceremony.  Id. at p. 764

The court in *Khan* likewise held that the inability of the plaintiff student to participate in the graduation ceremony or to deliver his valedictorian address did not rise to the level of irreparable harm.  The court noted that regardless of participation in the ceremony, plaintiff had received the education to which he was entitled and would receive his diploma.

As it relates to the facts of the present case, it is simply not true that the Portage Northern High School administrators were given notice of Plaintiff's concerns about the Shavuot holy day prior to February 21, 2023.  The only letter submitted to Portage Northern High School, after plaintiff began attending the school, was sent on September 3, 2019. (Exhibit A)  The letter was not sent to an administrator but only to the attendance secretary and high school counselor. More importantly, the letter makes no mention of Shavuot.  The letter states:

> Dates that Minaleah and Lev will be absent from school are in bold typeface.
>
> \*   \*   \*
>
> -       Rosh HaShana (Jewish New Year):  This holy day begins Sunday evening, September 29, 2019, and continues through the evening of Tuesday, October 1, 2019.  Mina and Lev will be absent on **Monday, September 30th and Tuesday, October 1st**.
>
> -       Yom Kippur (Day of Atonement) This holy day begins Tuesday evening, October 8, 2019.  Mina and Lev will not be able to attend anything that evening. As the holy day does not end until sundown on the Wednesday October 9, 2019, they will not be able to attend any events on either evening.  Further, Mina and Lev will be absent on **Wednesday, October 9, 2019**.

7

-       Sukkot (Festival of Booths):  This holy holiday begins on the evening of Sunday, October 13, 2019.  Mina and Lev will be absent from school on **Monday, October 14, 2019.**  The holiday/festival continues for about a week, but only the first day is designated as being holy for our family.  If anyone is interested in coming to our home to visit our sukkah during the holiday, please do not hesitate to reach out to me.

-       Shmini Atzeret (Holy Day at the Conclusion of Sukkot):  This holy day begins Sunday evening, October 20, 2019.  Mina and Lev will not be able to attend anything that evening, and will be absent from school on **Monday, October 21, 2019.**

-       Simchat Torah (Rejoicing in the Torah):  This holy day begins the evening of Monday, October 21, 2019 Mina and Lev will not be able to attend anything on that Monday evening.  The holiday continues on Tuesday, October 22, 2019, but Mina and Lev will be in school that day.

-       Hannukah (Festival of Lights):  This holiday begins the evening of Sunday, December 22, 2019, and continues for eight nights.  This is during Winter Break this school year (horray!).

-       Purim (Festival of Lots ):  Purim begins on the evening of Monday, March 9, 2020, and continues until the evening of Tuesday, March 10, 2020.  It would be appreciated if no school events were scheduled on the evening of Monday, March 9th, as there is a major Jewish celebration that night.  This holiday does not require Mina and Lev's absence from school.

-       Pesach (Passover);  Passover begins the evening of Wednesday, April 8, 2020, and  continues until Wednesday, April 15, 2020. (Please note that some Jewish households observe 8 days of Passover, we celebrate 7).  The first and last evening/days of this holiday are holy and require a cessation of work/schooling activities.  As the first portion of the holiday during Spring Break, **Mina and Lev will only be absent from school for Passover on Wednesday, April 15, 2020**.  Please note that while the intermediary days do not have intense observance requirements like the first and last days, it is nonetheless still a week of observance which includes a number of strictly adhered to dietary restrictions.  For the sake of inclusion, it would be greatly appreciated if there were no in-school parties involving food during Passover.

 In addition to the holy days listed above, please note that Mina and Lev are not able to attend any school events on Friday evenings (after sunset) or Saturdays (before sunset) due to observance of the Jewish Sabbath (Shabbat).

As indicated in the quoted portion of the letter, at no time did Plaintiff's mother claim in her letter that Shavuot was a holy day of concern. Thus, even if this letter had been provided to the school principal or other administrator, it would not have provided notice that having graduation on May 26, 2023 would be problematic.

The first time the school was notified that Plaintiff or her family had concerns regarding the date for graduation on was on February 21, 2023. This was 180 days after the school had provided notice to all families of senior students that graduation would take place on May 26, 2023. On August 22, 2022, a notice was provided to all senior parents along with a graduation handbook informing Plaintiff and her family that graduation was to take place on that date. (Exhibit B) In addition, an academic calendar has been on the school district's website since the beginning of the 2022-2023 school year which commenced in August, again indicating that graduation for Portage North High School would take place on May 26, 2023. (Exhibit C) Despite these notices, neither Plaintiff or her mother contacted the school until February 21, 2023 regarding their concerns.

Plaintiff's delay in contacting the school will cause irreparable harm to other students in the District if the date for graduation is changed. There are total of 291 students who are graduating from Portage Northern High School at the end of the school year (classes end for seniors on May 23). Each student is provided with eight tickets to the graduation ceremony. Thus, there will be just under 2400 people attending the ceremony. Many students have invited relatives to the graduation ceremony who are traveling by air. A number of these individuals have purchased non-refundable airline tickets. Families have planned for personal celebrations to take place around the time of the ceremony. In addition to graduation, there is an after graduation event known as "Grad Bash". This is an all night party put on for the graduating

9

students every year immediately following the ceremony.  The party is sponsored by the Portage Northern Parents Compass (a parent teacher organization).  These types of events have become customary in Michigan in an effort to reduce the risk of drunk driving and other safety concerns immediately following graduation.  This PTO had planned to start selling tickets to this event this week.  The event is scheduled to occur at a bowling alley which had made special considerations to keep its facility open all night for the "Grad Bash".  Members of the PTO and other parents have agreed to act as chaperones.

Plaintiff has suggested as a remedy that the graduation be moved to Tuesday, May 30, 2023, following the Memorial Day holiday.  The Portage Northern girls' soccer team is scheduled to participate in a playoff game that day commencing at 5:30 pm.  Thus, senior members of the soccer team and their parents would be unable to attend the graduation on the alternative date selected by plaintiff.  In addition, other students and their families will face conflicts during the days following Memorial Day weekend.  The last day of attendance at school by the seniors at Portage Northern High School is May 23, 2023.  It is not uncommon for graduates to have commitments the week following graduation involving trips to colleges and for those going into the military commencing basic training.

**II.    PURSUANT TO THE JUDICIAL IMPROVEMENTS ACT OF 1990, THE EXERCISE OF SUPPLEMENTAL JURISDICTION OVER PENDANT CLAIMS ARISING OUT OF THE SAME FACTS AND CIRCUMSTANCE IS MANDATORY UNLESS ONE OF FOUR EXCEPTIONS APPLY.**

Based on the facts and claims alleged, this Court does not have discretion to refuse to exercise supplemental jurisdiction at this stage of the litigation.  As amended in 1990, the Judiciary and Judicial Procedure Act at § 1367(a) states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts **shall** have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."  28 U.S.C. § 1367(a) (emphasis added)

Subsection (c) sets for the exceptions under which district courts may decline to exercise supplemental jurisdiction where the facts and claims form part of the same case and controversy as follows:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --
>
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

As the District of Columbia Circuit Court stated in *Lindsay v Government Employees Insurance Company*, 448 F.3d 416, 421 (D.C. Cir. 2006):

> Leaving aside the beginning proviso for the moment, we think it is clear that section 1367(a) authorizes a district court to exercise its supplemental jurisdiction in mandatory language. *See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1509 (3d Cir. 1996) ("By its language § 1367(a) confers jurisdiction in mandatory terms to include those cases `which form part of the same case or controversy under Article III of the United States Constitution' (except as expressly excluded by statute or as provided for in subsections (b) and (c))."); *McCoy v. Webster*, 47 F.3d 404, 406 n. 3 (11th Cir. 1995) ("Section 1367(a) *requires* the district court to exercise supplemental jurisdiction over claims which are closely related to claims over which the district court has original jurisdiction." (emphasis added)); *Executive Software N. Am. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1555 (9th Cir. 1994) ("By use of the word `shall,' the statute makes clear that if power is conferred under section 1367(a), and its exercise is not prohibited by section 1367(b), a court can

11

decline to assert supplemental jurisdiction over a pendent claim only if one of the four categories specifically enumerated in section 1367(c) applies."). In addition to its reference to subsection (b)'s excepting provision (which relates to diversity jurisdiction only), section 1367(a) includes three other bases for declining to exercise supplemental jurisdiction: (1) a federal statute "expressly provide [s] otherwise"; (2) the "other" claims are *not* "so related" to the claims within the court's original jurisdiction that they constitute part of the same "case or controversy"; and (3) the excepting provisions of section (c) (1)-(4), which allow the court in its discretion to decline to exercise supplemental jurisdiction.

In *Hall v Furest*, unpublished decision of the United States District Court for the Eastern District, docket no. 02-70625, 2007 WL 2159373 (E.D. Mich. 2007) the district court stated:

> When a federal district court has original jurisdiction, the court must exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 106.61 (3d ed.1997) (stating that the word "shall" in 28 U.S.C. 1367(a) is construed "to mean that a federal court must exercise supplemental jurisdiction if it is found to exist ...."). "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.' " *Harper v. Auto Alliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir.2004) (quoting *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir.1996)). In limited cases, federal courts can decline to exercise of supplemental jurisdiction. 16 MOORE'S FEDERAL PRACTICE § 106.61 (stating that the exercise of supplemental jurisdiction is mandatory, "unless one of the exceptions in [28 U.S.C. § 1367(c) ] applies"). The discretion afforded to district courts in determining whether to exercise supplemental jurisdiction is set forth in 28 U.S.C. § 1367(c). Id. at p. 3

In the present case, because the state law claims are for all relevant purposes identical to the federal claims, this Court is required to exercise supplemental jurisdiction unless one of the exceptions in subsection (c) apply. At the present time, that none of those exceptions apply.

### III.     NONE OF THE EXCEPTIONS SET FORTH IN SUBSECTION (C) APPLY.

Plaintiff's claims of an impermissible burden on her right to religious expression do not raise novel or complex issues of state law. In fact, the federal courts more regularly address claims arising out of the protections provided by the First Amendment and state corollaries. At this point, this Court has not dismissed any claims. Nor would there appear to be any other

12

exceptional circumstances which provide compelling reasons to decline jurisdiction. To the contrary, there are compelling arguments that this Court should exercise supplemental jurisdiction.

Fairness and comity require that this Court exercise supplemental jurisdiction. Because the statutes in question are substantially similar, Michigan courts often look to the interpretation of the similar federal statutes in resolving civil rights claims. As the the Michigan Court of Appeals explained:

> **Michigan courts are guided by federal court interpretations of the counterpart federal statute when interpreting provisions of the ELCRA.** *Chambers v. Trettco, Inc*, 463 Mich. 297, 313; 614 NW2d 910 (2000); *Barrett v. Kirtland Community College*, 245 Mich.App 306, 314, 628 NW2d 63 (2001). Federal precedent based on title VII, if analogous to questions presented under the ELCRA, are persuasive and are afforded substantial consideration by this Court. *Barrett*, 245 Mich.App at 315; *DeFlaviis,* 223 Mich.App at 437.

*O'Leary v. Charter Twp. of Flint*, No. 295078, 2011 WL 1376306, at *2 (Mich. Ct. App. Apr. 12, 2011). Defense counsel is not aware of any ways in which the elements to prove each claim brought under Michigan law are significantly different than those required to prove each claim under federal law. Likewise, the damages available to plaintiff do not differ. Litigating mirror-image cases in both a federal and state forum, when both use the same or similar modes of analysis, is a waste of resources and creates the risk of inconsistent verdicts.

## CONCLUSION

Plaintiff chose to allege both federal and state law claims. Defendants have exercised their rights to have this court decide the federal claims. The proceedings in State Court to date suggest that Defendants have been treated unfairly. The state and federal claims arise out of the same set of facts and the evidence relevant to each is the same. Pursuant to 28 U.S.C. 1367, exercise of supplemental jurisdiction is mandatory. Moreover, if this Court does not exercise

supplemental jurisdiction the parties will be required to litigate in two separate forums increasing the expense and effort required to bring the case to conclusion.

                                              Respectfully submitted,

                                              KLUCZYNSKI, GIRTZ & VOGELZANG

Date:  April 4, 2023                       By:     __/s/ Mark T. Ostrowski_____
                                                      Mark T. Ostrowski (P49761)
                                                      Jessica M. Stark (P80647)
                                                      Kluczynski, Girtz & Vogelzang
                                                      Attorneys for Defendants
                                                      3033 Orchard Vista Dr. S.E., Suite 308
                                                      Grand Rapids, MI 49546
                                                      (616) 559-8649

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause via the ECF E-filing system for the Western District of Michigan.

Dated: April 4, 2023                    Signed: _____/s/ Lynn R. Lewis_____
                                                             Lynn R. Lewis